HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v.
W. V. HOLLINGSWORTH.

Decided April 19, 1902.

**1.—Railway Company—Killing Stock—Private Crossing.**

The character of openings left by a railway company in its right of way
fence which divides an inclosure is a matter solely between the company and
the owner of the inclosure, and that they are such as permit stock to go upon
the track is not negligence as to an owner of land adjoining the inclosure whose
stock stray into it and thence go through the openings onto the railway track
and are killed.

**2.—Same—Stock Law.**

Where, after the stock law (chapter 128, Acts 1899) had been put in force in
his county, plaintiff put his mules into a field having a fence known to him to
be insufficient, and they strayed into an adjoining inclosure and thence onto
the railway track, they were "running at large" contrary to the stock law,

and as trespassers on defendant's track it owed with respect to them only the duty, after discovering them, to use such means as were at command to avoid injuring them.

**3.—Same—Finding—Liability Not Shown.**

A finding by the court, the case being tried without a jury, that "as soon as the engineer did discover the mules, he made every effort to stop, but did not succeed in doing so, and the stock were struck and killed," to which finding neither party has objected, is treated by the appellate court as a finding that the engineer, after discovering the mules on the track, could not by the use of the means at his command have stopped the train in time to avoid killing them, and since such finding shows no liability on the part of the defendant company, the judgment in plaintiff's favor is reversed and rendered for the defendant.

Appeal from the County Court of Grayson. Tried below before Hon. J. D. Woods.

*Baker, Botts, Baker & Lovett* and *Head & Dillard,* for appellant.

*J. F. Holt* and *C. L. Galloway,* for appellee.

BOOKHOUT, Associate Justice.—W. V. Hollingsworth instituted this suit in the County Court of Grayson County, Texas, alleging that on the 1st day of April, 1901, he had five mules killed by an engine and cars belonging to defendant, and that the same were of the value of $800. Defendant answered by general denial, and that if plaintiff's mules were killed he himself was guilty of contributory negligence proximately causing the injury, and specially pleaded that at the time the mules were killed chapter 128 of the Acts of the Regular Session of 1899 of the Legislature of the State of Texas were in full force in Grayson County, having been previously adopted at an election held for that purpose, and that under this law, mules, among other animals were prohibited from running at large in that county, and pleaded that defendant's railway was properly fenced. Plaintiff replied by supplemental petition that if the road had been fenced, defendant negligently failed to maintain the fence, and had permitted the same to get out of repair and openings to be left in it, and that the injury to plaintiff's mules was caused by the want of ordinary care on the part of the defendant. He charged that such want of ordinary care consisted in the failure to properly maintain the fence, in permitting gaps to be left in it, and the failure to exercise care by the operatives of the engine which killed the mules. He alleged that these operatives could have seen the mules, and did see them in time to have prevented injuring them, and yet struck and killed them. The case was tried before the court without a jury and resulted in a judgment for plaintiff for $725. No statement of facts was filed. The court filed the following conclusions of fact:

"1. On the 31st day of March, 1901, plaintiff, W. V. Hollingsworth, was the owner of five head of mules of the value of $725. In the manner hereinafter shown the mules strayed upon the track of defendant, and about 11:30 o'clock at night were struck and killed by one of its engines.

"2. On the afternoon preceding the night on which the animals were killed, they had been turned by plaintiff into a cultivated field belonging to him, situated in Grayson County, Texas, and which adjoined cultivated land belonging to one McFarland, but which had been leased to S. K. Dickson, who was then in possession of it. This land was also situated in said county. There was a wire fence between plaintiff's land and the Dickson land. This was in a bad condition, to plaintiff's knowledge, and not suitable for keeping the mules in the field into which they had been turned, nor suitable for keeping out stock of any kind. The mules strayed through the fence into the land leased by Dickson. The Dickson land adjoined the right of way of the Houston & Texas Central Railroad Company, which lay east of it. The plaintiff did not know that his mules had escaped from his land, and their getting out was without his knowledge or consent.

"3. Defendant's right of way where it adjoined the Dickson land, and along it, was fenced on both sides with a good, substantial fence, sufficient to prevent the mules from passing through it, except at the opening where they entered as hereinafter shown. The land of Dickson lay on both sides of the right of way. Over its track and right of way, so as to connect the McFarland land lying west of the track with that lying east of it, was a private crossing for the use of McFarland and his tenants. The left or west side of this crossing was open, but on the east side there was a gate. On either side of the crossing,—that is, to the north and south,—there was a cattle guard with wing fences. These cattle guards were made of pieces of iron laid on the ground. They had been permitted by defendant to become filled with sand and dirt, so that stock could easily pass over them; and defendant was negligent in permitting the cattle guards to get in this condition. In the right of way fence along the McFarland land on the west side, and between the cattle guards at the crossing, defendant had removed a part of its fence, leaving an open gap on the west without fence or gate about twenty feet wide for an entrance upon and over the crossing through which said mules entered upon said right of way. In leaving this opening defendant was guilty of negligence.

"4. Owing to the bad condition of the fence between plaintiff's land and the McFarland land in the possession of Dickson as aforesaid, plaintiff's mules, not being herded and without anyone with them, strayed through the fence onto the McFarland land on the afternoon of the 31st of March. This was without the consent and against the wishes of Dickson and McFarland. Some time on the night of the 31st of March the mules strayed from the McFarland land on to defendant's right of way and track through said gap, and the cattle guards being in the condition aforesaid, passed over them onto the track and between the fences, through which they could not go.

"5. On said night a train of defendant was being operated north by one of its engineers, and on the engine was also a fireman. The engineer and fireman were not keeping a proper lookout, and did not

discover the mules, which were on the engineer's side, as soon as they might have done if they had been keeping such lookout. As soon as the engineer, who first saw them, did discover the mules, he made every effort in his power to stop, but did not succeed in so doing, and the stock were struck and killed. This was, as aforesaid, in Grayson County. I find that the engineer and fireman were negligent in not keeping a better lookout.

"6. At the time plaintiff's stock were running on Dickson's land, and at the time they were killed, the county of Grayson, in due and proper manner as provided by law, had adopted and proclaimed all the provisions of the stock law, as contained in chapter 128, page 220, of the Acts of the Legislature of 1899, forbidding cattle, horses, and mules running at large, and that law was in full force and effect in Grayson County."

1. The appellant contends that the condition of the opening and cattle guards could not give a right of action to plaintiff, for the reason that they were left as a private crossing on the land of McFarland for the use of himself and tenants, and that if there was negligence on the part of defendant in the construction and maintenance of the same, this would not constitute negligence as to plaintiff upon which he could predicate a cause of action. The question presented is, did the railroad company owe plaintiff any duty in the construction and maintenance of the opening in its right of way fence connecting the land of McFarland on the west side of the track and right of way with his land on the east side thereof? The right of way and track divided McFarland's land or inclosure, and the opening or crossing was left to afford a passage between the inclosures. The facts present a case analogous to those passed upon by the Supreme Court in Railway v. Hanacek, 93 Texas, 446. In that case it was held that the kind of opening to be left by the railroad company in fencing its right of way was for the determination of the owner of the land and such company. The effect of that holding is that the character of opening left by a railroad in its right of way fence which divides any inclosure is a question solely between the company and the owner of such inclosure and his tenants. It is not a question in which one owning land situated as was plaintiff's has any concern. It follows that the conclusions of the trial court, that the defendant in leaving the opening in its fence on the McFarland land and in leaving the cattle guards in the condition in which they were left, was negligent, which gave plaintiff a cause of action, was error.

2. It is contended that the court erred in its second conclusion of law in holding that plaintiff's mules were not straying at large within the meaning of the law. It is shown that the provisions of chapter 128 of the Acts of the Legislature of 1899, prohibiting cattle, horses, and mules to run at large, was in full force and effect in Grayson County. It was further shown that plaintiff had turned his mules into a field surrounded by a fence which was insufficient to hold them, to

the knowledge of plaintiff, and that because of this condition of the fence the mules strayed from plaintiff's field onto the cultivated land belonging to McFarland and in possession of his tenant, Dickson, without being herded or having anyone in charge of them, and without the consent of Dickson or McFarland, and from thence strayed upon the right of way and track of defendant. It was shown that the plaintiff had no knowledge that the mules had escaped from his field. The court's second conclusion of law was, in effect, that inasmuch as the stock got out of plaintiff's land without his knowledge or consent, and inasmuch as the fence between him and McFarland was not as provided by the stock law of Grayson County, and as the railroad's was not such as was provided by law in that the opening was left in it, and that the cattle guards were permitted to become filled so that cattle could get upon the track, the cattle were not straying at large. By common law every man was bound to keep his cattle upon his own land; and if he suffered them to escape and go upon the land of another he was a trespasser. Evans v. Railway, 98 Mass., 560. This rule has not been regarded as applicable to the lands in this State, but it has been considered lawful for cattle to run at large, and he who wished protection against them was compelled to fence his lands. Davis v. Davis, 70 Texas, 123; Railway v. Johnson, 65 Texas, 393. Thus the law stood when the Legislature passed the act in 1899, above referred to. Upon this act being put in force in any county as to any class of animals mentioned therein it is made unlawful, by section 13 of said act, to permit any animals of said class to run at large. By section 14 it is provided if stock so forbidden to run at large shall enter the inclosed land of, or shall, without being herded, roam about the residence, lots, or cultivated fields of any person other than the owner of such stock, without his consent, in the territory within which the provisions of said act have become operative, the owner, user, or person in lawful possession of said land may impound said stock. The effect of the statute was to make it unlawful to permit stock of the prohibited class to run at large within the limits of the territory in which the act was put in force. Graves v. Rudd, 3 Texas Ct. Rep., 339; 65 S. W. Rep., 63.

When the plaintiff's mules entered upon the cultivated land of Dickson without his consent and without being herded, they were trespassing thereon and could have been impounded. When they strayed from the land of Dickson on the right of way of the defendant they were running at large and trespassing upon said right of way. Notwithstanding they were trespassing on defendant's right of way and track, it does not follow that the agents and employes of the defendant were authorized to negligently kill or injure them. But to entitle plaintiff to recover the burden was upon him to establish such negligence. If defendant's agents and employes operating its train discovered the mules upon the track in time to have avoided injuring them by the use of such means as were at their command, and failed to make use

of same, but negligently ran over the mules and killed or injured them, the company would be liable. As bearing upon this discussion, see Railway v. Russell, 43 S. W. Rep., 576; Evans v. Railway, 37 S. W. Rep., 93; Railway v. Cocke, 64 Texas, 151; Railway v. Dunham, 68 Texas, 231; Railway v. Nichols, 39 S. W. Rep., 954, Railway v. Hudson, 77 Texas, 497; Railway v. Robinson, 43 S. W. Rep., 76; Railway v. Adams, 58 S. W. Rep., 1035; Railway v. Lea, 20 Kan., 353.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

Appellant has filed a motion asking that the order reversing and remanding this cause be so modified that instead of remanding judgment be here rendered for appellant. The cause was tried by the court below without a jury and the court found in its conclusions of fact that "as soon as the engineer, who first saw them, did discover the mules, he made every effort in his power to stop them, but did not succeed in doing so, and the stock were struck and killed." Neither party objected to this conclusion.

In the condition of the evidence we are of the opinion that this conclusion should be treated as a finding that the engineer, after discovering the mules on the track, could not, by the use of the means at his command, have stopped the train in time to have avoided killing them. So treating the finding, it is our duty to render such judgment as should have been rendered by the trial court.

The rehearing is granted and judgment is here rendered for appellant.

*Reversed and rendered.*

Writ of error refused.